Kaminer, Prinz & Co., v. Wolf, etc.

## SALES—FRAUD—REPLEVIN.

2 Dec.
618

[Lucas Circuit Court, March 30, 1895.]

KAMINER, PRINZ & COMPANY, PLAINTIFFS IN ERROR, v. FERDINAND WOLF, ASSIGNEE FOR THE BENEFIT OF THE CREDITORS OF THEODORE HOLLANDER AND BERTHA HOLLANDER, DEFENDANT IN ERROR.

1. RIGHT TO REPLEVIN GOODS FROM ASSIGNEE OF INSOLVENT DEBTOR IN THE ABSENCE OF EVIDENCE, DISCLOSING FRAUD.

   Where goods were replevined from the assignee of an insolvent debtor and there was no evidence tending to show with certainty that such debtor at the time he ordered said goods knew of his failing condition, or did not intend to pay the debt contracted by their purchase, when it became due, and the question of such debtor's intention at the time of making such order, was submitted to a jury, which rendered a verdict in favor of the assignee and against the vendor, the plaintiff in replevin, a judgment rendered for such assignee on such verdict will not be reversed.

2. SALE OF GOODS TO AN INSOLVENT DEBTOR WHO HAS NO REASONABLE EXPECTATION OF PAYING FOR THEM, VOID FOR FRAUD.

   If goods are sold to an insolvent trader, who has knowledge of his insolvency, and in view of all the circumstances of which he, at the time of such sale, possesses knowledge, he has no reasonable expectation of paying for said goods, the same is equivalent to an intention not to pay for them, and the vendor may avoid the sale for fraud.

KING, J.

This is a petition in error to reverse the judgment of the court of common pleas. The original action was in replevin, commenced before a justice of the peace, to recover goods of the value of $295.30, which were taken in replevin and turned over to the plaintiff. A trial was had in that court and a verdict rendered for the defendant, finding the value of the goods. The case was appealed to the common pleas, the pleadings filed and a trial had which resulted in a verdict for defendants, for the same amount with interest.

It is claimed that the verdict was not supported by the evidence, and that claim is based substantially on these facts. The defendant, Theodore Hollander, was a merchant here in Toledo, and sometime in November, perhaps as early as October, ordered a bill of goods of the plaintiffs in error, who were merchants in St. Louis, through a member of the firm who was a traveling agent also, and who appeared here in Toledo and sold the goods—the goods taken being perhaps eight or ten dollars less than the amount of goods originally sold. It is claimed by plaintiff in error that at the time of the purchase of these goods, Theodore Hollander stated, in answer to questions by the plaintiff's agent, that business was first-class with him—that he asked him how his trade was, and he replied that it was first-class; that he asked him whether he owed anything for that season's bills, and he replied that the season was all right, and that he would discount every bill he bought, and didn't owe anything. Hollander denied all of that conversation and said that the goods were bought in the ordinary way; that no such questions were asked or answered by either of them; that the goods were to be shipped pretty quick and he was expecting them along about the middle of November, and they didn't come, and, along about the 23d of November he sent a postal card to the plaintiffs and asked what had become of the goods. The goods did arrive here about the 28th or 29th of November, and on the 30th of November he executed a mortgage, covering these goods and all the rest that he had, to his wife, to secure an indebtedness of $7,895.03, and delivered possession of the mortgage and of the goods to her; and a day or two after—I think about the 4th of December—he made a general assignment of his goods for the benefit of his creditors. The record is very scant in stating the amount of his indebtedness. In a general way, it is stated that it was $7,000, in addition to this indebtedness to his wife, making, in round numbers, an indebtedness of about $15,000. It

was stated in argument that his goods inventoried $7,000 or $8,000, and that the goods sold for $3,000 or $4,000, but there is nothing of that kind in the record. What the goods were worth, or what they sold for, we do not know. There was testimony that he was selling goods at that time to the amount, on the average, of about $900 per month, and had been doing so for six months previous. He swears that about fifty per cent of that would be profit and about half of that expenses. I think it appears from the record that he did not have any net profit at all but was running behindhand. So far as the wife is concerned, I don't know that her claim under the chattel mortgage is at all material, only as a circumstance indicating what the defendant was doing or intending, with this property. It was conceded that the debt to his wife was valid and *bona fide;* that he had received from her from time to time, for a period of ten years, money in different sums which he had borrowed, until it amounted to over $7,000, and he had given her notes when he had received these sums, and that they had been merged into two notes; that in the fore part of January of each year the interest was computed and a new note given. These two notes are exhibited. There is no question then, about the indebtedness to his wife, and there is no question but that he owed other bills of a certain kind, but just what they are, when incurred, or whether they were past due, or whether any of them are due, the record is entirely silent, and the question is whether the verdict is against the weight of the evidence in that state of the testimony. The court charged the jury in this language:

"Now, the inquiry in this case in this connection is, whether it was Hollander's intent at the time he bought the goods not to pay for them. The intent of a person, the intent with which an act is done, is an operation of the mind, and can only be determined from the act itself, and from the surrounding circumstances, and from the acts and declarations of the parties in connection therewith. It is a question of fact which you must decide from a consideration of all the facts and circumstances. The fact, if it be a fact, that at the time of the purchasing of these goods, Hollander was insolvent—that is, that his debts exceeded his property—that fact is not of itself sufficient to show that his intention was not to pay for the goods; because an insolvent person in purchasing goods may intend to pay for them, and may expect that he will be able to pay for them. So also, if Hollander was insolvent, and his insolvency was known to him and was not known to the plaintiffs, that of itself is not sufficient to show that his intention was not to pay for the goods. But if Hollander knew that he was insolvent, and in view of all the circumstances of which he had knowledge he had no reasonable expectation that he would be able to pay for the goods, then, in law, that is equivalent to an intention not to pay for them. Under such circumstances it would be fraud to buy the goods and agree to pay for them, if he had no reasonable expectation that he would be able to pay for them."

No complaint is made of the charge, and the charge states the law. As the supreme court say in 31 O. S., *Talcott* v. *Henderson:*

"While therefore a purchase of goods by an insolvent vendee, who conceals his insolvency, with intent to injure the vendor, is fraudulent and voidable, yet a purchase under like circumstances, save only that such intent is absent, is not, in law, fraudulent.

"If the rule of law be not as stated, and the intent to injure be not of the essence of the fraud in such case, then it would be wholly immaterial whether the insolvency of the purchaser was known to himself; and the rule would be that all sales to an insolvent purchaser, where the insolvency is unknown to the vendor, are fraudulent and voidable. For such a rule no one would contend. All would admit that knowledge by the purchaser of his own insolvency is necessary to establish the fraud. But such knowledge, of itself, is entirely innocent. It is only when connected with the concealment of the fact, that fraud is shown. The simple failure to disclose a fact, however, is not equivalent to its concealment. The latter implies a purpose, a design; the former does not. If, then,

such knowledge on the part of the purchaser be necessary to make out a fraud, it is because it becomes the predicate of an intent—and intent to injure."

There is no evidence in the record, that we can find, tending to show with any certainty whatever, that this defendant, Hollander, knew anything about his condition or his circumstances, when he ordered this bill of goods. He knew that he ran along and was doing a business of about seven, eight or nine hundred dollars a month, and that a part of it was profit, but how much he didn't seem to know himself—he supposed a part of it was profit, and, for anything that appears in the record, his ordering of this bill of goods—which was not extravagant— $300—was done with a perfect intention on his part to pay for them when the bill became due, if he continued in business. There is nothing to show that he did not think of continuing in business at the time he gave the order. There is nothing in the circumstances of the order tending to show that, except the declaration of the plaintiff's agent that he did make an expression of his ability to pay and of his condition; which, if he did, would be evidence of an intent to commit a fraud, but that he denies. That question of fact was submitted to the jury.

We are unable to find anything in this record that would warrant us in setting the verdict aside. The question of fact has been passed upon by the jury, and without some indication from the record itself that the jury were not warranted in their finding upon the state of facts here disclosed, the judgment of the common pleas must be affirmed.

*M. G. Bloch*, Attorney for Plaintiff in Error.

*E. D. Potter*, for Defendant in Error.